IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSA RIVERA *et al*, | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | CASE NO. 1:11-CV-147 |
| vs. | : | |
| | : | (Chief Judge Yvette Kane) |
| LEBANON SCHOOL DISTRICT, | : | |
| | : | |
| *Defendant.* | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PROVISIONAL APPROVAL OF SETTLEMENT
AGREEMENT AND RELEASE**

The Plaintiffs have moved for provisional approval of a Settlement
Agreement and Release (the "Agreement") (Exhibit A to the Motion) that the
parties have reached in this class action, as well as for approval of a notice to the
class (Exhibit B to the Motion). Plaintiffs submit that the Agreement meets the
standards for approval of a class action settlement and that provisional approval
should be granted and a fairness hearing held in accordance with Fed. R. Civ. P.
23(e).

**Introduction**

This case was filed on January 21, 2011 as a class action by four parents
who had been assessed truancy fines in excess of $300 per citation and by the

Pennsylvania Statewide Conference of the NAACP.[1] The Complaint included in

Count I claims under the federal Constitution alleging violations of the Equal

Protection and Due Process Clauses by Defendant, the Lebanon School District

("the District") in connection with selective reductions in the truancy fines

imposed by the magisterial district courts and in the District's retention of fines by

those who had already paid them. Count II included a claim for restitution under

state law of amounts received and retained by the District in excess of $300 as

unjust enrichment. The District's motion to dismiss the Complaint was denied by

this Court on November 16, 2011. The parties actively conducted discovery,

including depositions of District officials. This Court held a hearing on the motion

for class certification and, on June 28, 2012, certified a plaintiff class consisting of

"all persons against whom the Magisterial District Court 52-01-01 or 51-02-01

imposed fines exceeding $300 per citation for truancy violations in the Lebanon

School District who have paid an amount exceeding $300 plus costs on any single

citation" ("the Class").

On November 20, 2012 the Court denied the District's motion for summary

judgment and granted in part Plaintiffs' motion for partial summary judgment on

Plaintiffs' state law claim in Count II, holding that "[a]fter analyzing the facts and

---

1 One of the individual plaintiffs, Rosa Rivera, has since withdrawn.

evidence in the light most favorable to Defendant, the Court finds that Defendant has been unjustly enriched and Plaintiffs are entitled to restitution." The Court then set a trial date for January 24, 2013 on Count I.

Following a mediation session before Magistrate Judge Carlson, the parties informed the Court they believed a trial was unnecessary. The parties have now concluded a Settlement Agreement and Release (the "Agreement"), which they submit to the Court for Provisional Approval so that notice may be sent to Class Members and a hearing may be held in accordance with Rule 23(e) to determine whether the Agreement is "fair, reasonable, and adequate."

## Summary of the Settlement Agreement

Under the Agreement, the District will establish a Class Restitution Fund of $108,000 (the "Fund"). Class Members shall be eligible to receive from the Fund reimbursement for any amount paid in excess of $300 on account of a truancy fine imposed after January 1, 2004, except for any amounts credited by the magisterial district courts prior to execution of this Agreement to reduce another truancy fine owed to the District. Records of the Administrative Office of Pennsylvania Courts show payments in excess of $300 per fine totaling some $106,000 on 346 fines to 248 persons.

The District will pay all costs of notices to the class and of administering the Fund. The District will also pay the cost, up to $9,000 total, of trying to locate class members who are no longer directly traceable to the last address known to Defendant through the services of Heffler Claims Administration ("Heffler"). Any additional cost for locating class members ("Approved Costs") necessary to fulfill this Agreement and approved by Class Counsel (which approval will not be unreasonably withheld) will be drawn from the Fund before payment to Class Members. If the actual claims and the Approved Costs of locating class members exceed $108,000, payments to class members shall be reduced pro rata.

If any amounts remain in the Fund after payment of all Class Member claims and the Approved Costs, the three remaining individual plaintiffs shall receive, in addition to any amounts they are entitled to as Class Members, up to $3,000 each in consideration of the uncompensated time and effort they expended in pursuing this claim on behalf of the class. Any amounts remaining after these expenditures shall be used by the District to pay for truancy prevention programs.

The Agreement requires the District to undertake efforts to find Class Members, including first-class mail and publication of newspaper notice in both English and Spanish. Class Members are required to submit claim forms within six months (the "Claims Period") in order to receive reimbursement. If the District and

a Class Member cannot resolve any disagreement on the amount of reimbursement based on records available, Class Counsel shall attempt to resolve the matter, and if it is not resolved it may be submitted to a magistrate judge designated by the Court. Payments to class members will be made within 45 days after the expiration of the Claims Period, unless there are insufficient funds to reserve for unresolved claims, in which case payment will be made within 45 days of resolving such claims.

The District has also agreed to pay attorneys fees of $147,000.00 to the Public Interest Law Center of Philadelphia for its services as counsel to the Plaintiffs and the Class, which figure includes reimbursement of out-of-pocket expenses incurred in the course of litigation. Pepper Hamilton LLP, which also served as counsel to Plaintiffs and the Class, has agreed not to seek any fees for its services, or to recover its out-of-pocket costs. The Public Interest Law Center of Philadelphia agreed not to seek, and will not be entitled to, any fees for monitoring disbursement of the Fund to class members. Payment of the attorneys fees will not reduce the amount payable to Class Members for reimbursement.

Approval of the Court shall terminate all claims of Plaintiffs and Class Members that were asserted in the litigation. The Court will retain jurisdiction to assure implementation of the Agreement.

## ARGUMENT

**I.     The Settlement Agreement Amply Satisfies the Standards for Provisional Approval of a Class Action Settlement.**

To approve a settlement in a class action suit preliminarily, before directing that members of the class be given notice and an opportunity to be heard in a formal fairness hearing, the Court should be satisfied that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. In *Mehling v. New York Life Insurance Co.,* 246 F.R.D. 467 (E.D. Pa. 2007), the court said:

> The ultimate approval of a class action settlement depends on "whether the settlement is fair, adequate, and reasonable." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983). In evaluating a proposed settlement for preliminary approval, however, the Court is required to determine only whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Thomas v. NCO Fin. Sys.*, 2002 U.S. Dist. LEXIS 14157,

at *14 (E.D. Pa. July 31, 2002) (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)). At this stage, the Court "need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." *Id.* (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974)). A common inquiry is whether the proposed settlement is the result of "arms-length negotiations." *Id.*; *Tenuto v. Transworld Sys., Inc.*, 2001 U.S. Dist. LEXIS 17694, at *3 (E.D. Pa. Oct. 31, 2001). After a preliminary determination as to the fairness of the Settlement, the Court must direct notice to class members and hold a final fairness hearing before formally approving the settlement. *See Manual for Complex Litigation (Fourth)* § 21.632 (2004).

*Id.* at 472; *see also Samuel v. Equicredit Corp.*, No. 00-cv-6196, 2002 U.S. Dist. LEXIS 8234, at *1 (E.D. Pa. May 6, 2002).

This Settlement Agreement meets those standards: Although the class plaintiffs will release all claims that were asserted in the litigation, class members have obtained the gist of what they sued for—sufficient funds to reimburse them for any of the excess truancy fines they have paid that were retained by the District. The size of the Restitution Fund created by the Agreement is equal to all of the known claims as shown by current records of the Administrative Office of Pennsylvania Courts. The known claimants are 248 persons. Because many of these claims arose from payments made from three to eight years ago, it is likely that a substantial number of eligible class members will have moved and will not be found. Consequently if there are additional claims beyond those on the most recent court records, there should be adequate funds to pay them. Similarly, the District has

agreed to pay up to $9,000 in costs to locate class members who are not at their last known address on the District's records. These searches are to be made by an independent company—Heffler—which is a leader in this field to assure a substantial full-faith effort is made. This amount is sufficient to cover full searches for as many as 225 of the 248 known class members. In the unlikely event it is not sufficient to find all of the missing Class Members, the District and Class Counsel may incur additional search costs which will be paid from the Restitution Fund. As long as those additional expenses are less than the final unclaimed amounts, there will be no reduction in the reimbursement of any class member.

None of the other provisions of the Agreement have any impact upon the amount of funds available to pay Class Members' claims. All other costs are to be paid in full by the District, without any risk to Class Members of set-off from the Restitution Fund including the payment of attorneys fees and costs to Class Counsel, or will only be paid if there are unclaimed monies in the Restitution Fund, such as the payments to three individual plaintiffs in recognition of their efforts and expenses in aiding the litigation. Consequently, the risk to class members of payment less than 100 percent of the maximum amount to which they would be entitled is extremely small.

### A. The Settlement Negotiations Were Serious, Informed and Non-Collusive.

There can be no question that the negotiations that led to the proposed Settlement Agreement were at arm's length. The Settlement came only after vigorously contested litigation. The District pursued its Motion to Dismiss not only before a Magistrate Judge but then on appeal to the District Court itself. After six months of discovery, the District opposed the motion for Class Certification, challenging all of Plaintiffs' witnesses through cross examination in a hearing. It then filed a motion for Summary Judgment on Count I and opposed Plaintiffs' Motion for Partial Summary Judgment on Count II. By the time of the Court's decisions on these motions, the parties had exchanged pre-trial statements listing witnesses and trial exhibits. Consequently each side was well informed of the evidence available and was able to weigh risks and costs of continuing to try the remaining issues in an informed manner.

The parties were fortunate to have the services of Magistrate Judge Carlson to assist in settlement negotiations. Settlement of the size of the Fund to meet the claims of Class Members was resolved with his guidance before any other issues and independently of funds available either for the named plaintiffs or attorneys fees. Subsequently the parties were able to resolve the issue of payment to locate missing class members, payment to the named plaintiffs, payment of attorneys fees, and the scope of notices to class members.

**B.**      **The Proposed Settlement Agreement Contains No Obvious Deficiencies.**

The proposed settlement agreement provides the plaintiff class with a remedy that addresses all of the relief that was requested in the Complaint. The Fund will pay for the reimbursement requested for class members, and the District will pay for adequate notice to find class members. The Agreement leaves adequate time to find class members and to allow them to assert their claims.

The Settlement Agreement contains no obvious deficiencies such as unduly large payments of attorneys fees to plaintiffs' counsel or the named plaintiffs. The three remaining named plaintiffs are receiving a modest $3,000 each in addition to any reimbursement, but that amount comes not at the expense of the class but only from unclaimed reimbursements at the end of the claims period.[2] The Agreement provides for a one-time payment of attorney fees and costs to the Public Interest Law Center of Philadelphia of $147,000. Plaintiffs' counsel will receive no further payments for work on approval or implementation of the Agreement. In addition,

---

2 *See generally Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc) ("Incentive awards are not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class. The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." (ellipsis in original) (internal quotation marks and citations omitted)).

Pepper Hamilton LLP agreed to waive all of its fees and costs as part of the settlement. The Law Center's fees under the Agreement represent approximately eighty percent of the lodestar amount submitted by the Law Center to the District, and less than 2/3 of the combined lodestar and costs claimed by class counsel. Importantly, payment of the attorneys fees will not come from any funds otherwise payable to the class. *See Samuel v. Equicredit Corp.,* 2002 U.S. Dist. LEXIS 8234 at \*5 n.4 (settlement preliminarily approved where fees were equal to or less than plaintiffs' lodestar).

## C.     The Settlement Agreement is Fair and Reasonable.

The Settlement Agreement is plainly within the range of reasonableness of a class action settlement given the late stage of settlement, the level of success, and the amount of litigation required in order to achieve the settlement.

In *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975), the Court of Appeals held that the following factors should be considered by district courts in determining whether a settlement under Rule 23(e) is fair, reasonable, and adequate to serve the interests of the class:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;

(6) the risks of maintaining the class action through trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157.[3] Measured by these factors, the proposed Settlement Agreement is fair and reasonable.

*(1) The complexity, expense and likely duration of the litigation.* Although Summary Judgment had been entered on the state law unjust enrichment claims in Count II, the legal issues involving that claim were novel, as were the equal protection claims awaiting trial in Count I. Further litigation of Count I or appeal on either count would have seriously delayed reimbursement to Class Members as well as increasing the cost of litigation to all parties.

*(2) The reaction of the class to the settlement.* This, of course, can only be assessed after notice and hearing. It is important, however, that the named individual class representatives and the NAACP-PA are in favor of the settlement.

*(3) The stage of the proceedings and the amount of discovery completed*. This factor has been called a "lens" through which "courts can determine whether

---

3 The Settlement Agreement in this case was negotiated after class certification, so the especially stringent rules applicable to settlement prior to certification do not apply here. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 805 (3d Cir. 1995).

counsel had an adequate appreciation of the merits of the case before negotiating."

*Serventi v. Bucks Technical High Sch.*, 225 F.R.D. 159, 167 (E.D. Pa. 2004)

(citing *In re GMC*, 55 F.3d at 813). Counsel's appreciation of the merits was well-

developed in the present case after completion of all discovery, decision by the

Court on the summary judgment motions on both counts of the Complaint, and the

exchange of witness and exhibit lists in anticipation of trial having been completed.

   *(4) The risks of establishing liability*. On Count II Plaintiffs had succeeded

in establishing liability, but the amount of such liability was still an unknown. On

Count I, Plaintiffs had to prove its case based on inferences and based on its ability

to challenge the credibility of Defendant's officials or else it had to convince the

Court that it was unnecessary to decide the federal issue in the case. Although there

is precedent of courts' making such a decision, there are no cases requiring a court

to do so. Such a case is inherently risky. *See Serventi*, 225 F.R.D. at 167.

Furthermore, the risk of delay was substantial.

   *(5) The risks of establishing damages.* Although the Court ruled that the

class was entitled to restitution, it had not established a procedure for determining

what any individual class member was entitlted to. Doing so in a contested

proceeding could have substantially delayed resolution of this matter. The parties

were willing in the Settlement Agreement to apportion the risk of estimating what

the final amount of reimbursement would be because of the availability of records

from the Administrative Office of Pennsylvania Courts.

*(6) The risks of maintaining the class action through trial.* The class was

certified and the summary judgment motions were briefed on a class-wide basis;

thus, this does not appear to be a great risk.

*(7) The ability of the defendants to withstand a greater judgment*. The

District has revenues of approximately $57 million, and had reserves of $9 million

at the beginning of this fiscal year according to financial statements on its website.

Its chief business officer testified that the truancy fines received are relatively

insignificant in its budget. Consequently it could withstand a greater judgment.

While the Class Restitution Fund came from monies unnecessarily paid by plaintiff

class members to the District and which were still held by the District, the

remaining cost of the Settlement Agreement will come from revenues of the

District, most of which ultimately come from taxpayers. All parties sought to limit

those expenses to those necessary to adequately provide notice to class members to

protect their rights and to reasonably compensate counsel for the work undertaken

to vindicate the class member's rights. Incentive payments to the three individual

Plaintiffs, for example, will come only from amounts remaining in the Class Fund

from unclaimed reimbursements, rather than from additional contributions by the District.

*(8) The range of reasonableness of the settlement fund in light of the best possible recovery* and *(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.* In evaluating these factors, courts compare the relief accorded by the settlement to the relief the plaintiffs could expect to receive after trial, in light of the risks of litigation. *D.M. v. Terhune*, 67 F. Supp. 2d 401, 410-11 (D.N.J. 1999). Here, where the settlement addresses virtually all the relief requested by the plaintiffs in their complaint and accords additional relief to the individual plaintiffs, it is submitted that the settlement is a fair resolution of Plaintiffs' claims, "considering the attendant risks of litigation and the marginal additional relief possible from a favorable outcome." *Id.* at 411. Although the attendant risks are principally delay, they are important to class members.

## II.    The Proposed Notice to Class Members is Adequate.

The parties propose that notice be given to class members through a variety of methods, including notifying class members identifiable from court records by individual first class mail by the District, and all class members additionally

through publication in English and Spanish twice in the Lebanon *Daily News*, as well as by notice on the District's website.

The parties submit that such notice is adequate in this case. Members who can be identified will be notified individually. Members who have not been identified will receive notice through publication reasonably calculated to be available to class members. The extent of the notice is reasonable in light of the fact that class members are expected to be receiving complete reimbursement of any amounts they would be entitled to receive pursuant to the litigation.

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "[T]he type of notice to which a member of a class is entitled depends upon the information available to the parties about that person" and the possible methods of identification. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977). In determining the reasonableness of the effort required, the court must look to the "anticipated results, costs, and amount involved." *In re Nissan,* 552 F.2d at 1099. For those whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the Due Process Clause. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950).

Finally, the form of notice is adequate to inform class members of their rights. The bilingual notice identifies who are class members, explains that the Agreement will affect their rights to reimbursement, and alerts them that they will be required to submit claims forms and that their claims may be subject to pro rata reductions. The notice also provides instructions on obtaining information relevant to the litigation, gives contact information for inquiries concerning the Settlement, and sets forth the process for objecting to the Settlement.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court provisionally approve the proposed Settlement Agreement, approve the parties' proposed form of notice and proposal for providing notice, and set this matter for a fairness hearing.

Respectfully submitted,

By:   *s/ Michael Churchill*

Michael Churchill (Pa. Bar No. 4661)
Benjamin D. Geffen (Pa. Bar No. 310134)
Public Interest Law Center of Philadelphia
1709 Benjamin Franklin Parkway, 2nd Floor
Philadelphia, PA 19103
Phone :      215.627.7100
Fax:          215.627.3183
Email:       mchurchill@pilcop.org
                  bgeffen@pilcop.org


Thomas B. Schmidt III (Pa. Bar No. 19196)
Pepper Hamilton LLP
100 Market Street, Suite 200
P.O. Box 1181
Harrisburg, PA 17108
Phone:       717.255.1164
Fax:          717.238.0575
Email:       schmidtt@pepperlaw.com


Dated:        February 21, 2013